In the Matter of LLOYD, a Person Alleged to be a Person in Need of Supervision, Appellant.

First Department, March 10, 1970.

*Mara T. Thorpe* of counsel (*Charles Schinitsky,* attorney), for appellant.

*Anthony B. Gliedman* of counsel (*Alfred Weinstein* with him on the brief; *J. Lee Rankin, Corporation Counsel*), for respondent.

STEUER, J. In this Family Court proceeding the appellant was adjudged a person in need of supervision and ordered to be placed in the Otisville Training School for a period of up to 18 months. There is little doubt that in so ordering the learned Family Court Judge was doing the best that he could for the appellant in a well-nigh impossible situation and one with which he never should have been faced. Frankly, we also are at a loss, and the disposition made is in the hope that conditions have so improved that a more suitable solution is possible.

The appellant, now just 15 years of age, together with his four sisters, first came to the attention of the Family Court on February 3, 1967, on a petition to have him declared a neglected child. It was incontrovertible that his situation necessitated such a disposition. He was then living with his sisters and parents in rooms reeking with the effluvia of neglect. The children were left alone and unsupervised. The mother, hostile to the educational process, encouraged them in truancy. It appears that both parents were inebriates. Following an adjudication, promises of reform led to their release in the mother's custody. Some weeks later aggravation of home conditions led to a second hearing, whereupon appellant was placed in the custody of the Department of Welfare and sent to the Children's Center. From that time on until May 13, 1969, he was in and out of the Children's Center, being released to his mother. (What became of his father is not revealed in the record.) On May 14, 1969, he was placed back in the Children's Center, where he has been officially consigned up to the date of this proceeding.

His stay at Children's Center has, however, been more a matter of official notation than actual residence. He has con-

stantly eloped to his mother's home and remained there for extended periods. We have been informed that efforts to place him in private charitable institutions have been unsuccessful, as well as efforts to place him in a foster home. The situation presented to the Family Court upon the hearing under review was that release to his mother was unthinkable, placement in a suitable private institution unable of accomplishment, and retention at the Children's Center no longer possible. In this dilemma, and faced with the absolute necessity of providing some means of care for this boy, the finding was made that he was a person in need of supervision, and he was directed to be placed in training school.

A careful review of this record indicates that this appellant is a " neglected child " rather than " a person in need of supervision " as defined in section 732 of the Family Court Act. While there is ample support for the finding that appellant habitually absented himself from the Children's Center, this conduct does not warrant a finding that he was habitually disobedient or ungovernable. In each instance he went back to his mother's house because she had failed to visit him in the Center and feelings of neglect and rejection became unbearable. We appreciate the dilemma of the court but, as we pointed out before (*Matter of " Anonymous "* v. *People*, 20 A D 2d 395, 400), the provision of proper facilities is the responsibility of the Legislature and the legislative failure in that regard does not warrant circumvention of the statute.

Incidentally, the Legislature has long recognized that the State training schools are hardly a beneficial haven for young people in need of supervision and such disposition was first interdicted (see Second Report of the Joint Legislative Committee, McKinney's Sess. Laws 1962, p. 3435) and then allowed as a stopgap measure for three years (L. 1964, ch. 518; L. 1965, ch. 126; L. 1966, ch. 705) until it was finally made permanent.

Is this child then to be relegated to the custody of his mother under conditions that the record shows have actually deteriorated since the original, and justified, finding of neglect? It is easy to say, as it is undoubtedly true, that it is not our problem. The court obviously cannot provide a facility where none exists. We do not give up, however, without a final gesture. Taking recourse in section 761 of the Family Court Act, we direct a new adjudicatory and dispositional hearing in the hope that with the lapse of time a place in some authorized agency may be found or that the Children's Center may be able to make a viable adjustment.

The order appealed from should be reversed, on the law, on the facts and in the exercise of discretion, and the petition remanded pursuant to section 761 of the Family Court Act, without costs and without disbursements, for further hearing and disposition.

CAPOZZOLI, J. P., McGIVERN and NUNEZ, JJ., concur.

Order entered on or about November 10, 1969, unanimously reversed, on the law, on the facts and in the exercise of discretion, without costs and without disbursements, and the petition remanded pursuant to section 761 of the Family Court Act for further hearing and disposition.